## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

### CENTRAL DIVISION

**STORAGECRAFT TECHNOLOGY CORPORATION, a Utah corporation,**

**Plaintiff/Counterclaim Defendant,**

vs.

**PERSISTENT TELECOM SOLUTIONS, INC., a Delaware corporation,**

**Defendant/Counterclaim Plaintiff.**

REDACTED
**MEMORANDUM DECISION
AND ORDER**

**Case No. 2:14CV76 DAK**

This matter is before the court on (1) Plaintiff/Counterclaim Defendant StorageCraft Technology Corporation's Sealed Motion for Summary Judgment on Persistent Telecom Solutions, Inc.'s Proprietary Information-based Counterclaims; and (2) Plaintiff/Counterclaim Defendant StorageCraft Technology Corporation's Sealed Motion for Summary Judgment on Persistent Telecom Solutions, Inc.'s Non-Proprietary Information-based Counterclaims. A hearing on the motions was held on August 26, 2015. At the hearing, Plaintiff/Counterclaim Defendant StorageCraft Technology Corporation ("Plaintiff" or "StorageCraft") was represented by Heather M. Sneddon, Thomas R. Karrenberg, Brett P. Johnson, and Jason E. Greene. Defendant/Counterclaim Plaintiff Persistent Telecom Solutions, Inc. ("Defendant" or "Persistent") was represented by Stanley J. Preston and Brandon T. Crowther. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law

and facts relating to the motions.  Now being fully advised, the court renders the following
Memorandum Decision and Order.

## I. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).  A fact dispute is "material if it might affect the outcome of the suit under
governing law," *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), and dispute about a material fact is genuine "if
the evidence is such that a reasonable jury could return a verdict for the non-moving party on
the issue." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (internal quotation
marks and citation omitted).  When considering a motion of summary judgment, the court
views "all facts [and evidence] in the light most favorable to the party opposing summary
judgment." *S.E.C. v. Smart*, 678 F.3d 850, 856 (10th Cir. 2012).  Moreover, the affidavit
supporting or opposing motions for summary judgment "must be made on personal
knowledge, set out facts that would be admissible in evidence, and show that the affiant or
declarant is competent to testify on the matter stated." Fed. R. Civ. P. 56(c)(4); *Smart*, 678 F.3d
at 856.

On a motion for summary judgment, "[t]he moving party has 'both the initial burden of
production . . . and the burden of establishing that summary judgment is appropriate as a
matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor*

2

*v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2003)). The moving party's initial

burden may be met merely by identifying portions of the record which show an absence of

evidence to support essential elements of the opposing party's case. *Kannady*, 590 F.3d at

1169 (10th Cir. 2010); *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir.

2000). However, "[i]f the movant carries this initial burden, the nonmovant may not rest on its

pleadings, but must bring forward specific facts showing a genuine issue for trial as to those

dispositive matters for which it carries the burden of proof." *Kannady*, 590 F.3d at 1169

(internal quotation marks and citation omitted); *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d

1229, 1242 (10ᵗʰ Cir. 2013). A non-moving party "may not rely on mere allegations, or denials,

contained in its pleadings or briefs" to defeat summary judgment. *Trainor*, 318 F.3d at 982. "In

a summary-judgment proceeding, a party's assertion of undisputed facts is ordinarily credited

by the court unless properly disputed by the opposing party." *Kirch v. Embarq Mgmt. Co.*, 702

F.3d 1245, 1250 (10th Cir. 2012) (citing Fed. R. Civ. P. 56(e)). Overall, the central inquiry is

"whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty

Lobby*, 477 U.S. 242, 252 (1986).

3

## II. MOTION FOR SUMMARY JUDGMENT ON PERSISTENT'S PROPRIETARY INFORMATION-BASED COUNTERCLAIMS

### A. Background Facts[1]

StorageCraft is a computer software company that specializes in the development and

marketing of backup, disaster recovery, and system migration software, including both

perpetually licensed software and software for use on a subscription or managed-service basis.

In particular, StorageCraft developed and sells the ShadowProtect® family of products.

ShadowProtect provides its end users with sector-level backup of their computer

environments. Once installed on a computer, ShadowProtect makes periodic backups of all

data contained on the computer's hard drive. These backups or "snapshots" take the form of

"Image Files." These Image Files are saved to another drive or computer on the same network,

---

[1] The background set forth here constitutes an abbreviated summary of the undisputed facts pertaining to the instant motion. Persistent has admitted, without qualification, that the following statements of undisputed fact that were included in StorageCraft's initial Motion for Summary Judgment on Defendant's Propriety Information-Based Counterclaims are undisputed: Undisputed Fact Nos. 1-3, 5-8, 13, 15, 19-21, 24, 27, 29-31, 33-34, 36-47, 52-55, 58, 60, 62-64, 67, 72, 76-77, 79-80, 83, 86, 91-92, 94, 99, and 101-105.

Whether due to a misunderstanding of its burden on summary judgment, a failure to conduct sufficient discovery, and/or the non-existence of evidence to create a genuine issue of material fact, Persistent did not properly dispute, pursuant to Rule 56(c)(1), StorageCraft's remaining statement of facts. Therefore, regarding the facts that Persistent purported to dispute (but failed to cite to admissible evidence to create a genuine dispute), and for the reasons set forth in StorageCraft's Reply Memoranda (Docket No. 69, pages 4-55), the court hereby considers these facts undisputed for purposes of the instant motion. *See* FRCP 56(e). As for Persistent's Statement of Additional Material Facts, most are undisputed or immaterial. To the extent there are some facts that are disputed by StorageCraft, the court agrees with StorageCraft that the disputes do not create genuine issues of material fact to preclude summary judgment, as set forth in StorageCraft's Reply Memorandum. (Docket No. 69, pages 55-78).

4

or can be saved and/or copied to a remote drive or computer. In the event of a disaster, which could be anything from a hard drive failure to a fire or natural disaster, the Image Files can be used to quickly restore the data and return the original computer to operation.

Prior to 2012, Persistent's predecessor company, Doyenz, was a company that provided business continuity, virtualization, and cloud computing services to customers. Among other things, Doyenz's cloud services product allowed its customers to upload backup image files created by third-party software for storage on off-site servers controlled by Doyenz (referred to as Doyenz's "cloud") and facilitated recovery of those images from the cloud in the event of a disaster.

For much of its history, Doyenz's cloud solution was designed to work primarily with backup image files created by StorageCraft's ShadowProtect products. Doyenz originally marketed its cloud services product under the name "ShadowCloud" with the intent of attracting existing StorageCraft customers who desired to rely on cloud technology as part of their backup and recovery strategy. To facilitate its efforts to attract StorageCraft customers, Doyenz approached StorageCraft, proposing, among other things, that StorageCraft grant Doyenz the right to distribute StorageCraft's ShadowProtect products along with Doyenz's cloud services product. Under such an agreement, Doyenz would be able to market a bundled product that would allow its customers to use StorageCraft software to create backup image files, and then upload them to and restore them from Doyenz's cloud.

On December 30, 2009, Doyenz and StorageCraft entered into their first Software

5

Distribution and License Agreement ("Software Agreement"), which permitted Doyenz to purchase certain StorageCraft products for the purpose of redistributing them in a bundle with Doyenz's cloud services product to managed service providers ("MSPs").

Soon after, on February 4, 2010, Doyenz executives met with StorageCraft to provide StorageCraft with a field update and a demonstration of the Doyenz cloud storage solution, "ShadowCloud," among other things. The next day, StorageCraft's Dave Stufflebeam sent an email to Craig Blessing at Doyenz, requesting that Doyenz provide a demonstration account to permit him to test Doyenz's cloud storage solution. Later that evening, Tony Lesirge, Doyenz's Director of Customer Service, set up the Doyenz demo account and emailed Mr. Stufflebeam the password to access the account.

The demo account gave Mr. Stufflebeam the ability to use and test the Doyenz cloud storage solution as a user or customer of the solution.[2] Doyenz did not provide any additional tools or other information through the account, including any computer source code.

---

[2] Persistent purports to dispute the facts contained in this paragraph, citing the Declaration of Brandon T. Crowther and certain exhibits attached thereto. Having read the contents of the exhibits to which Persistent refers, it does not appear that there is any evidence to create a genuine issue of material fact. Persistent does not describe the purported "information" that was supposedly available through the demo account. Persistent's response does not even suggest—let alone explain why—the "information" was confidential or proprietary in the first place. Further, Persistent does not deny, even in a conclusory manner, that the demo account gave Mr. Stufflebeam the same experience that any other end user of Doyenz's product would have had, which means that nothing revealed through the demo account was a secret. Therefore, the court deems admitted the fact that the Doyenz demo account merely gave StorageCraft an "end user experience" of Doyenz's product. *See* DUCivR 56-1(c); Fed. R. Civ. P. 56(e).

Moreover, Doyenz did not provide Mr. Stufflebeam with any information concerning the

Doyenz "business model." Also, at no point did Doyenz inform StorageCraft or Mr.

Stufflebeam that any of the information available through the demonstration account was

proprietary or should be treated as confidential. No non-disclosure agreement between the

parties had been signed, and Doyenz did not ask that Mr. Stufflebeam execute any

non-disclosure or confidentiality agreement before accessing the account. StorageCraft and

Mr. Stufflebeam both understood that the demonstration account was simply a standard test

account that would permit a customer to familiarize itself with the Doyenz product before

deciding whether to purchase it.

Six months later, Doyenz and StorageCraft entered into a Mutual Non-Disclosure

Agreement (the "NDA"), which did not become effective until August 24, 2010, the date it was

fully executed.[3] The NDA did not relate to the Doyenz demo account, but instead to the

parties' subsequent discussions regarding the possibility of Doyenz developing a rebranded

version of its cloud storage product for StorageCraft. Those discussions, however, were

fruitless.

Before partnering with Doyenz, StorageCraft engaged in due diligence concerning the

financial health of Doyenz. StorageCraft has produced undisputed evidence that Doyenz did

---

[3] Persistent purports to dispute this fact, but it offers no evidence other than a legal argument that the Software Agreement required StorageCraft to keep information derived from Doyenz's demo account confidential. It is not at all clear from the language of the Software Agreement, however, that it has any relevance to the situation involving the demo account. Accordingly, the court deems this fact to be undisputed.

not produce the vast majority of the financial information requested by StorageCraft, and thus

Doyenz was never able to demonstrate to StorageCraft's satisfaction that it was financially

sound or viable. Regardless of the reason, however, there is no dispute that StorageCraft

declined to use the Doyenz platform for a rebranded cloud storage solution.

REDACTED

8

StorageCraft through installation on machines that remain under the control of Datto.

In June 2012,                                      REDACTED

StorageCraft announced to the market that it would be launching StorageCraft Cloud

Services.  StorageCraft Cloud Services is comprised of                REDACTED


and the StorageCraft cloud manager, which is StorageCraft software that

converts the proprietary format of StorageCraft's backup files into a block format that is

readable and usable by        REDACTED              t was developed by StorageCraft, as is

evident from the fact that its sole function is to convert StorageCraft proprietary files into

another format.  Beyond that, it plays no role in the actual cloud services functionality of

StorageCraft Cloud Services.

On July 30, 2012, Doyenz and StorageCraft entered an MSP Distribution Agreement (the

"Agreement"), which expressly superseded the parties' earlier December 30, 2009 agreement.

Under the Agreement, Doyenz was granted the right to distribute certain StorageCraft

software licenses, as well as the right to use StorageCraft's Data Center Recovery Product

("DCRP") in strict accordance with the Agreement.  The DCRP allowed Doyenz to manipulate,

manage, and restore StorageCraft end users' ShadowProtect image files as part of Doyenz's

backup cloud computing service, then known as "rCloud" (and f/k/a "ShadowCloud").  Use of

StorageCraft's DCRP was necessary to allow Doyenz to recover ShadowProtect image files from

the cloud and restore them to clients' computers in the case of disaster.  Without the right to

9

use the DCRP, Doyenz's ability to service its customers that used StorageCraft backup products would be significantly limited. The Agreement expressly indicated that Doyenz's right to use the DCRP would end upon termination of the Agreement itself.

During the fall of 2012, after the Agreement was executed, Doyenz contacted StorageCraft seeking consent to assign its rights and obligations under the Agreement to Persistent, which was in the process of negotiating the purchase of virtually all of Doyenz's assets. StorageCraft gave consent to the assignment under conditions not relevant to this action. Thereafter, Persistent became Doyenz's successor in interest under the Agreement. In addition, according to Persistent, its asset purchase included Doyenz's legal claims against third parties.

On March 18, 2013, StorageCraft notified Persistent that it would not be renewing the Agreement after the expiration of its initial term on July 31, 2013. As a result, the Agreement expired on July 31, 2013. Persistent subsequently notified StorageCraft that it intended to elect a transitional extension of the Agreement pursuant to Section 28.D. of the Agreement. Many of the facts and circumstances surrounding the MSP Agreement and the subsequent transitional extension of the Agreement are the subject of StorageCraft's other motion–the Motion for Summary Judgment on Persistent's Nonproprietary Information-based Counterclaims – and the court makes no ruling at this time on the facts pertaining to those counterclaims.

In any event, following the expiration of the Agreement on July 31, 2013, and the

10

expiration of StorageCraft's subsequent extension of the Agreement, StorageCraft claims that Persistent was continuing to offer a version of its cloud services product that could only function by relying on StorageCraft's copyrighted source code that is part of the DCRP.

Soon thereafter, StorageCraft initiated this action claiming that Persistent was engaging in direct and contributory copyright infringement, among other things. In particular, after terminating its Agreement with Persistent, StorageCraft claims that it discovered that Persistent was unlawfully using StorageCraft's intellectual property and copyrighted computer code to deliver Persistent's cloud storage solution to its customers. StorageCraft also alleges that Persistent was instructing and encouraging end users of StorageCraft's software to infringe StorageCraft's intellectual property and copyrights.

Persistent responded to StorageCraft's Complaint by asserting five Counterclaims, which are the subject of the instant two motions. Persistent's counterclaims include (1) tortious interference with contract and existing and prospective economic relations; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) violations of the Utah Uniform Trade Secrets Act; and (5) unjust enrichment. In filing its Motions for Summary Judgment, StorageCraft has divided the five counterclaims into the "proprietary information-based counterclaims" and the "nonproprietary information-based counterclaims. The court will address each motion in turn. The court first addresses the "proprietary information-based counterclaims."

11

## B.     Discussion of StorageCraft's Motion for Summary Judgment on Persistent's Proprietary Information-Based Counterclaims

Three counterclaims are the subject of StorageCraft's Motion for Summary Judgment on the "Proprietary Information-based Claims." These counterclaims include (1): trade secret misappropriation; (2) breach of the parties' NDA; and (3) breach of the implied covenant of good faith and fair dealing (to the extent they are based upon Persistent's allegation that StorageCraft entered into the NDA "to obtain the Proprietary Information to assist in developing Plaintiff's cloud services").

### 1. Trade Secret Misappropriation Counterclaim

To overcome StorageCraft's motion for summary judgment on Persistent's trade secret misappropriation claim, Persistent is required to produce admissible evidence that would be sufficient to allow a rational jury to find in its favor on each of the essential elements of the claim: (1) the existence of a trade secret, (2) communication of the trade secret to StorageCraft under an express or implied agreement limiting disclosure of the secret, and (3) StorageCraft's use of the secret in a manner that injured Persistent. *CDC Restoration & Constr. LC v. Tradesman Contractors, LLC*, 274 P.3d 317 (Utah 2012); Utah Code Ann. § 13-24-1, et seq. Persistent has failed to produce evidence sufficient to establish a disputed fact with respect to any of these elements.[4]

---

[4]  In addition, to the extent Persistent now claims that it has created a dispute of fact as to StorageCraft's misappropriation of Persistent's source code, that claim fails for two reasons: Persistent never alleged in any pleading that StorageCraft misappropriated Persistent's computer source code, which is fatal to its claim.  Moreover, it has not cited any admissible

### a. Existence of a Trade Secret

To prove the existence of a trade secret, Persistent must show (1) that it possesses information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and (2) that it has taken "efforts that are reasonable under the circumstances" to maintain the secrecy of the information. Utah Code Ann. § 13-24-2(4). Persistent has not created a genuine issue of material fact as to either of these requirements.

Persistent claims that it disclosed proprietary information to StorageCraft through the demo account. But Persistent has failed to present any evidence of what proprietary information was supposedly disclosed to StorageCraft through the demo account or any evidence that proprietary information was disclosed to StorageCraft through any other means.

In its Opposition Memorandum, Persistent contends for the first time that the "proprietary information" identified in its Amended Counterclaim and interrogatory responses is not the proprietary information that StorageCraft allegedly misappropriated. In its Amended Counterclaim, Persistent explicitly alleges that the features identified in paragraph 13 of the Amended Counterclaim constitute its proprietary information.[5] And in response to StorageCraft's first interrogatory, which asked Persistent to identify "all of the 'proprietary

---

evidence to create a genuine issue of material fact on the issues of whether StorageCraft ever received Persistent's source code or that StorageCraft misappropriated such source code.

[5] See Am. Countercl. at ¶ 13, Dkt. No. 18

13

information' that [Persistent] claim[s] Doyenz shared with StorageCraft about 'how [Doyenz's] cloud storage technology operated,'" Persistent provided a more detailed list of the functionalities and features identified in paragraph 13 of its Amended Counterclaim.[6] It is these same lists that Persistent now claims do not constitute its trade secrets. Rather, Persistent claims in its Opposition Memorandum that its trade secrets may be found in the 79,000 pages of documents it has produced to StorageCraft.[7] Persistent, however, cannot change the basis for its trade secret misappropriation claim merely to avoid summary judgment.

Moreover, even setting aside this failure, Persistent still has not specified with any particularity what its purported trade secrets are. This court has repeatedly recognized that a claimant must identify its purported trade secrets with enough particularity to distinguish them from the general skill and knowledge of others in the industry before a claim for trade secret misappropriation can be maintained under Utah law. *Brigham Young Univ. v. Pfizer, Inc.*, 861 F. Supp. 2d 1320, 1324 & nn. 10-11 (D. Utah 2012) (to establish the existence of a trade secret, claimant must specifically "explain how the combination of elements is sufficiently different, or special, to merit protection"); *Utah Med. Products, Inc. v. Clinical Innovations Assoc., Inc.*, 79 F. Supp. 2d 1291, 1313 (D. Utah 1999) ("Utah Medical must define its claimed trade secrets with the precision and particularity necessary to separate it from the general skill and knowledge

---

[6] *See* StorageCraft's Mot. for Summ. J. Re Proprietary Info. at p. 17, SOF ¶ 27, Docket No. 41.

[7] *See* Persistent's Mem. in Opp'n Re Proprietary Info at p. 18, Docket No. 54.

14

possessed by Wallace, Cutler, and Smith."); *see also ImaxCorp. v. Cinema Tech., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998) ("A plaintiff seeking relief for misappropriation of trade secret 'must identify the trade secrets and carry the burden of showing that they exist.' . . . The plaintiff 'should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'").

Here, it is entirely unclear what trade secrets, if any, were disclosed to StorageCraft and/or what trade secrets StorageCraft allegedly misappropriated. Persistent, therefore, has not met its burden of identifying its trade secrets with sufficient particularity, which alone is sufficient to grant StorageCraft's motion for summary judgment on Persistent's trade secret misappropriation counterclaim.

Even if Persistent returned to its original reliance on the alleged "proprietary information" identified in paragraph 13 of its Amended Counterclaim, Persistent has expressly conceded or failed to dispute that the elements of this alleged "proprietary information," cannot qualify as protectable trade secrets that could have been misappropriated by StorageCraft. Specifically, in its motion for summary judgment, StorageCraft presented admissible evidence to demonstrate that Elements 2, 3, 4, 6, 7, and 10 of Persistent's alleged "proprietary information" are readily ascertainable by any end-user of Persistent's cloud storage product. In its opposition, Persistent failed to raise any dispute that these elements are ascertainable to any person using Persistent's cloud storage product. It is undisputed,

15

therefore, that Elements 2, 3, 4, 6, 7, and 10 of Persistent's alleged "Proprietary Information"
are readily ascertainable by any end-user of Persistent's product. As such, those elements
cannot, as a matter of law, constitute trade secrets because they are not in fact "secret."

Moreover, in its motion for summary judgment, StorageCraft presented admissible
evidence to demonstrate that Elements 1, 5, 12, and 13 of the "proprietary information"
identified in Persistent's Amended Counterclaim are not part of the functionality of
StorageCraft Cloud Services, as alleged in Persistent's Amended Counterclaim. In its
opposition, Persistent expressly conceded this. Therefore, it is undisputed that Elements 1, 5,
12, and 13 of Persistent's cloud services product are not part of the functionality of
StorageCraft's Cloud Services.

In its Amended Counterclaim, Persistent specifically identified the development of
StorageCraft's Cloud Services as the basis for its allegation that StorageCraft misappropriated
Persistent's trade secrets. No other conduct on the part of StorageCraft was alleged to have
constituted misappropriation. Thus, even if Elements 1, 5, 12, and 13 could constitute
protectable trade secrets that belong to Persistent, Persistent has conceded that such
elements are not part of StorageCraft Cloud Services and therefore could not have been
misappropriated by StorageCraft in the manner alleged in the Amended Counterclaim.
Accordingly, Persistent's misappropriation claim fails on these elements as well.

In its motion for summary judgment, StorageCraft presented admissible evidence to
demonstrate that Elements 2, 3, 4, 6, 7, 8, 9, 10, and 11 of Persistent's alleged "proprietary

16

information" describe functions and features that have been widely implemented in the software industry or were independently developed by XXXXX StorageCraft prior to the release of Doyenz's cloud storage product to the market. In its Opposition, Persistent either expressly conceded or failed to dispute those facts. Therefore, the court considers it undisputed that Elements 2, 3, 4, 6, 7, 8, 9, 10, and 11 describe software functions and features that have been widely implemented in the software industry or were independently developed by XXXXX StorageCraft prior to the release of Doyenz's cloud storage product. As such, those elements are generally known to Persistent's competitors and cannot qualify as protectable trade secrets. *See* Utah Code Ann. ¶ 13-24-2(4) (defining "trade secret" to mean information that "derives independent economic value . . . from not being generally known to . . . other persons who can obtain economic value from its disclosure or use"); *Med Spring Group, Inc. v. Feng*, 368 F. Supp. 2d 1270, 1278 (D. Utah 2005) (plaintiff's alleged trade secret did not qualify for protection under the UTSA because it was "generally known within the medical device industry"); *Microbiological Research Corp. v Muna*, 625 P.2d 690, 696 (Utah 1981) (to qualify as a protectable trade secret, information must "not be . . . within the knowledge of the trade").

Furthermore, information that has been independently obtained by a defendant without reference to a claimant's purported trade secrets cannot qualify as a trade secret either. *See MedSpring Group*, 368 F. Supp. 2d at 1279 (information that was "developed by the Defendants independently" did not qualify as a trade secret); *Envirotech Corp. v. Callahan*, 872

17

P.2d 487, 494 (Utah Ct. App. 1994) ("[T]rade secret law . . . does not offer protection against discovery by fair and honest means, such as by independent invention . . . ."). Therefore, Persistent's express and implicit concessions that Elements 2, 3, 4, 6, 7, 8, 9, 10, and 11 describe functions and features that have been widely implemented in the software industry, or were independently developed by XXXXX StorageCraft prior to the release of Doyenz's cloud storage product, warrant granting summary judgment on Persistent's trade secret misappropriation claim on this basis as well.

Moreover, even assuming that information obtainable through StorageCraft's use of the Doyenz account had been identified and qualified as a trade secret, Persistent has failed to demonstrate the existence of any disputed fact regarding whether adequate precautions were taken to protect the secrecy of such information. *See* Utah Code Ann. § 13-24-2(4)(b) (defining a "trade secret" to mean information that is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy"). A failure to do so will cause proprietary information to lose its status as a protectable trade secret. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished."); *Southwest Stainless, LP v. Sappington,* 582 F.3d 1176, 1190 (10th Cir. 2009) (quoting *Ruckelshaus*, 467 U.S. at 1002) (district court erred in determining that information constituted a trade secret where it had been disclosed to a third-party who had no obligation to keep the information confidential). Here, it is undisputed

18

that Persistent has failed to take adequate measures to protect the confidentiality of its purported trade secrets.

First, Persistent has failed to dispute that StorageCraft was given access to the demo account at issue before the NDA was executed, meaning that StorageCraft had no obligation under the NDA to keep any of the information obtained through use of the demo account confidential.[8] Persistent has also admitted that several other software companies operating in the cloud-based backup and disaster recovery industries have been given access to its alleged "proprietary information." With one exception, however, Persistent has failed to produce any evidence that those companies were subject to a non-disclosure agreement when accessing the Doyenz/Persistent "proprietary information.[9] Finally, Persistent has also failed to dispute that the Doyenz demo account it provided to StorageCraft gave StorageCraft the same access that any other end user of Doyenz's cloud storage product would have had, and nothing more. Accordingly, for this additional reason, StorageCraft is entitled to summary judgment on

---

[8] Persistent contends that, even if the NDA did not apply (because it was not executed until well after the demo account was set up), the 2009 Software Agreement entered by Doyenz and StorageCraft required StorageCraft to keep information obtained through the demo account confidential. Persistent, however, has not provided evidence to create a genuine dispute about whether the confidentiality provision in the Software Agreement was even applicable to information obtained through the demo account.

[9] Persistent's argument that it has a standard business practice of entering into non-disclosure agreements prior to sharing any confidential information is inadequate to create a disputed fact. *See Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1201 (10th Cir. 2015) ("We do not consider conclusory and self-serving affidavits."). This is particularly true when Persistent did not provide the "best evidence," which would be the purported non-disclosure agreements with Symantec, VMware, SunGard, or Acronis. *See* Fed. R. Evid. 1002.

19

Persistent's trade secret misappropriation claim.

> b.    *Communication of the Trade Secret Under an Express or Implied*
> *Agreement Limiting Disclosure of the Secret*

Persistent has not created a genuine issue of material fact as to whether its purported

trade secrets were disclosed to StorageCraft under an express or implied agreement limiting

their disclosure. To prove its misappropriation claim, Persistent has the burden to establish

that its purported trade secrets were disclosed to StorageCraft under an express or implied

agreement limiting their disclosure. *CDC Restoration*, 274 P.3d at 323; Utah Code Ann. §

13-24-2(2). Assuming for the sake of argument that Persistent had sufficiently identified

protectable trade secrets—which it has not—its misappropriation claim still fails as a matter of

law because StorageCraft received access to those purported trade secrets through the Doyenz

demo account at a time when StorageCraft was not under any contractual obligation to keep

such information confidential.

In its Amended Counterclaim, Persistent alleged that the NDA, which was executed on

August 24, 2010, was the agreement that required StorageCraft to keep information disclosed

through Doyenz's demo account confidential.[10] Persistent confirmed that it was the NDA that

protected the secrecy of the purported "proprietary information" revealed through use of the

Doyenz demo account in its answers to StorageCraft's interrogatories.[11] In its opposition to

---

[10] *See* Am. Countercl. at ¶ 9, Dkt. No. 18.

[11] *See* Persistent's Opp. to Mot. for Summ. J. Re Proprietary Info. at Resp. to SOF ¶¶ 13-14, Docket. No. 54.

20

summary judgment, however, Persistent conceded that the NDA was not executed until several months after StorageCraft was given access to Doyenz's demo account.[12] Because the NDA, by its own terms, became effective on the date of its execution, Persistent cannot dispute that the NDA did not require StorageCraft to keep any of the information obtained through the Doyenz demo account confidential. And because Persistent did not allege any other basis for concluding that StorageCraft had an obligation to keep information obtained through the demo account confidential, StorageCraft is entitled to summary judgment on Persistent's misappropriation claim.

Persistent attempts to salvage its ability to establish this element of its trade secret misappropriation claim, however, by arguing for the first time in its Opposition Memorandum that it was the Software Agreement signed by Doyenz and StorageCraft in December 2009 that required StorageCraft to keep information obtained through Doyenz's demo account confidential. This argument fails as well. First, Persistent did not allege that the Software Agreement obligated StorageCraft to keep information obtained through the demo account confidential. "Notwithstanding the wide latitude given to litigants at the pleading stage, a pleading is not to be used as a constantly moving target that the pleader can reformulate every time the pleading is challenged." *See Am. Petroleum Inst. v. Technomedia Int'l, Inc.*, 699 F. Supp. 2d 258, 264 n.4 (D.D.C. March 20, 2010) (*citing TV Commc'ns Network, Inc. v. Turner*

_____

[12] *See* Persistent's Opp. to Mot. for Summ. J. Re Proprietary Info. at Resp. to SOF ¶¶ 6-16, Docket No. 54.

*Network Television, Inc.*, 964 F.2d 1022 (10th Cir. 1992)). Facts that are not alleged in a claimant's pleading cannot be relied on to defeat a motion for summary judgment. *See Chicago Reg'l Council of Carpenters v. Vill. of Schaumburg*, 644 F.3d 353, 356-57 (7th Cir. 2011) (affirming summary judgment where plaintiff's opposition relied only on facts not alleged in pleadings); *Estrada v. Progressive Direct Ins. Co.*, 53 F. Supp. 3d 484, 497 (D. Mass. 2014) ("Plaintiffs cannot now introduce an entirely new theory of liability in their summary judgment papers. . . . In doing so, they impermissibly seek to amend their complaint without ever filing a motion for leave to amend pursuant to Fed. R. Civ. P. 15.") (citations omitted).   Thus, Persistent's failure to allege in its Amended Counterclaim that the Software Agreement obligated StorageCraft to keep information obtained through Doyenz's demo account confidential is sufficient, by itself, to justify granting summary judgment on Persistent's trade secret misappropriation claim.

Moreover, the plain language of the Software Agreement did not impose any obligation on StorageCraft to maintain the confidentiality of information obtained through use of Doyenz's demo account.   Persistent suggests that section 19.A of the Agreement imposes a general obligation on StorageCraft to keep "business and technical information" disclosed by Doyenz confidential.   But the plain language of that section does not generally apply to all disclosures; instead, section 19.A is unambiguously limited, by its own terms, to information disclosed "hereunder."   The Agreement pertains only to StorageCraft's license to Doyenz to distribute StorageCraft's ShadowProtect™ line of software products, and it has nothing to do

with Persistent's cloud storage technology. Thus, any disclosure of information pertaining to Doyenz's cloud storage products, including the Doyenz demo account, could not have occurred "under the Agreement" such that the Agreement's confidentiality provision would apply.

Yet, even if information obtained through the demo account could reasonably be said to have been disclosed under the terms of the Software Agreement, section 19.B(iv) explicitly excluded from the confidentiality provision any information that was "generally known to third parties at the time it was disclosed or has become generally known to third parties through no fault of the Receiving Party." As discussed above, Persistent has admitted, either explicitly or by failing to dispute StorageCraft's evidence, that the "trade secrets" that StorageCraft purportedly learned by using Doyenz's demo account were widely implemented in the software industry or were readily ascertainable by any end user of Persistent's cloud storage product. Therefore, section 19.B(iv) of the Agreement unambiguously exempted StorageCraft from any obligation to keep such information confidential. Persistent, therefore, has not created a genuine issue of material fact as to whether its purported trade secrets were disclosed to StorageCraft under an express or implied agreement limiting their disclosure, and its claim for misappropriation fails for this reason as well.

       *c.    StorageCraft's Use of the Secret in a Manner That Injured Persistent*

Finally, Persistent has failed to show that StorageCraft actually misappropriated any trade secrets. Persistent has the burden, in opposing summary judgment, to produce admissible evidence sufficient to demonstrate a genuine disputed fact regarding whether

23

StorageCraft actually misappropriated Persistent's alleged trade secrets by using them in a manner that injured Persistent. Again, Persistent has failed to meet its burden.

Persistent argues that disputed facts exist concerning StorageCraft's alleged misappropriation of Persistent's purported trade secrets because a jury could reasonably infer, from the mere fact that StorageCraft

REDACTED

that StorageCraft shared Persistent's purported trade secrets with   XXXX

The court disagrees. In light of Persistent's failure to identify any proprietary information that was provided to StorageCraft, the inferential leap sought by Persistent is unreasonable given the that Persistent's only "evidence" that StorageCraft allegedly stole its trade secrets is the fact that StorageCraft      REDACTED

and subsequently brought a competing cloud storage product to market. Thus, the court finds that Persistent has failed to create a triable issue on this element of its misappropriation claim.

Accordingly, Persistent has failed to create a genuine issue of disputed fact with regard to all three elements of a misappropriation claim: (1) the existence of a trade secret, (2) communication of the trade secret to StorageCraft under an express or implied agreement limiting disclosure of the secret, and (3) StorageCraft's use of the secret in a manner that injured Persistent. StorageCraft has established that summary judgment on this claim is appropriate as a matter of law, and Persistent's claim for trade secret misappropriation is therefore dismissed with prejudice.

24

## 2. Breach of Contract Counterclaim

Persistent's breach of contract counterclaim is based on its contention that StorageCraft violated the NDA by misusing confidential information obtained by StorageCraft through the use of Doyenz's demo account. Persistent has admitted, however, that the information that was allegedly protected by the NDA was provided to StorageCraft several months before the NDA was executed, or even contemplated.[13] Thus, the NDA could not have applied to Doyenz's disclosure of such information and StorageCraft's purported use of such information could not have constituted a breach of the NDA. Therefore, Persistent's breach of contract counterclaim fails as a matter of law.

Persistent next contends that its breach of contract counterclaim should survive summary judgment because StorageCraft allegedly misused proprietary information that was protected by the Software Agreement and Persistent's rCloud Service Agreement. As discussed above, however, Persistent's Amended Counterclaim does not identify either of these agreements as bases for its breach of contract counterclaim. For the reasons stated above, neither of these agreements protected the confidentiality of the information that StorageCraft allegedly misused. Therefore, these agreements cannot provide a basis for Persistent to go to trial on its breach of contract counterclaim. Persistent's breach of contract counterclaim also fails because Persistent has not presented evidence sufficient to allow a

---

[13] Also, as discussed above, Persistent has not identified what the allegedly proprietary information was.

25

reasonable jury to conclude that StorageCraft misused any confidential information.

Accordingly, Persistent has failed to carry its summary judgment burden on its claim for breach of contract, and StorageCraft has established that summary judgment on this claim is appropriate as a matter of law. Persistent's counterclaim for breach of contract is therefore dismissed with prejudice.

### 3. Implied Covenants of Good Faith and Fair Dealing

In its Amended Counterclaim, Persistent alleges that StorageCraft breached a covenant of good faith and fair dealing that was implied in the NDA by entering into the NDA with the intent to "obtain the Proprietary Information to assist in developing Plaintiff's cloud services[.]"[14] While Persistent has not offered any admissible evidence to show that StorageCraft actually had such an intent, Persistent's implied covenant counterclaim would fail as a matter of law even if such evidence did exist because intent alone is not sufficient to sustain a claim for breach of the implied covenant of good faith and fair dealing.

Utah case law makes clear that the implied covenant requires parties to "refrain from actions that will intentionally destroy or injure the other party's right to receive the fruits of the contract." *See Young Living Essential Oils, LC v. Marin*, 266 P.3d 814 (2011). Thus, alleging that StorageCraft entered the NDA with the intent of breaching it is not sufficient, as a matter

---

[14] Persistent's counterclaim for breach of the implied covenants of good faith and fair dealing (to the extent the claim is not based on the NDA) is addressed in conjunction with StorageCraft's Motion for Summary Judgment on Persistent's Nonproprietary Information - based Counterclaims.

of law, to sustain a claim for breach of the implied covenant of good faith and fair dealing.

Persistent has not alleged that StorageCraft engaged in any wrongful conduct that would

constitute a breach of the implied covenant to begin with.

Thus, Persistent has not produced sufficient evidence to sustain its counterclaim for

breach of the implied covenants of good faith and fair dealing based on the NDA. StorageCraft

has established that summary judgment on Persistent's claim for breach of the implied

covenant of good faith and fair dealing, to the extent it is based on the NDA, is appropriate as a

matter of law, and that counterclaim is dismissed.

## C. Conclusion

For the foregoing reasons, StorageCraft's Motion for Summary Judgment on

Persistent's Proprietary Information-based Counterclaims is granted.[15]  Persistent's

counterclaims for trade secret misappropriation, breach of contract, and breach of the implied

covenants of good faith and fair dealing (to the extent based on the NDA) are dismissed with

---

[15]  Persistent has not requested that the court defer ruling on the instant motion until
after fact discovery, under Rule 56(d) of the Federal Rules of Civil Procedure, as it did in its
Opposition Memorandum to StorageCraft's motion regarding the nonproprietary-based
information claims.  The only statement in its 72-page Opposition Memorandum pertaining to
the motion at hand that even hints at additional discovery is a statement made in the context
of explaining Persistent's flawed view of its burden on summary judgment: "Persistent
recognizes that it will ultimately have the burden of persuasion for its trade secrets
misappropriation claim, but when that time comes, it will also have the benefit of full fact
discovery and expert discovery." See Docket No. 54, Opp'n Mem. at 61.  Because Persistent
has not sought relief under FRCP 56(d), because it has not set forth any information regarding
the need for any additional discovery, and because the facts required to defeat the instant
summary judgment motion should have been in Persistent's possession in any event, the court
will not defer consideration of the instant motion.

27

prejudice.

## III. DISCUSSION OF THE NON-PROPRIETARY INFORMATION-BASED COUNTERCLAIMS

Three counterclaims are the subject of StorageCraft's Motion for Summary Judgment on the "Nonproprietary Information-based Claims." These counterclaims include (1) tortious interference with contract and existing and prospective economic relations; (2) breach of the implied covenants of good faith and fair dealing (to the extent this claim is not based on entering into the NDA to obtain the Proprietary Information to assist in developing Plaintiff's could services); and (3) unjust enrichment.

Regarding this motion, Persistent has requested that the court defer consideration of this motion until after the close of discovery, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure ("FRCP"). While Persistent has not complied with the requirements of FRCP 56(d) by filing a declaration or affidavit to explain why it cannot present the facts it needs to justify its opposition, the court finds that this oversight elevates form over substance, given the clear and repeated requests for Rule 56(d) relief found throughout the Opposition Memorandum and the scattered identification of facts Persistent believes will become available during fact discovery.[16] Unlike the situation presented in the previous motion regarding the proprietary information-based claims, the court agrees that many of the facts needed to survive the instant summary judgment motion are in the possession of StorageCraft

---

[16] *See* Opp'n Mem, Docket No. 55 at 2, 3, 4, 5, 7, 9, 10, 11, 17, 27, 29, 33 n.6, 34 n.8, and 51.

28

or third-parties. Moreover, there is no dispute that the fact discovery deadline had not yet passed when the motion was filed. Accordingly, the court will deny without prejudice StorageCraft's Motion for Summary Judgment on the Nonproprietary-Based Counterclaims.

Because the original fact discovery deadline has now passed, the court will permit the parties to conduct additional fact discovery through January 15, 2016. All fact discovery must be completed by that date—and any discovery requiring a written response must be served well in advance of that date to permit the opposing party to respond within the time provided under the FRCP. After January 15, 2016, StorageCraft may file a new motion for summary judgment on the nonproprietary information-based counterclaims, or it may file a motion to simply renew the previously filed motion.

In addition, in the future, any sealed motion or memorandum that is filed must be accompanied by a redacted, publicly filed version of the document, as set forth in the local rules.[17] *See* DUCivR 5-2(e).

## V. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Sealed Motion for Summary Judgment on Defendant's Proprietary Information-Based Counterclaims [Docket No. 41] is GRANTED, and Persistent's Counterclaims for Breach of Contract (Second Claim for Relief);

---

[17] If a motion or memorandum is filed under seal because of references to the opposing party's documents that were designated as confidential, the filing party may file a notice with the court so stating. The court will then order the party designating the documents as confidential to propose a redacted version of the motion or memorandum for the filing party to publicly file.

Breach of the Implied Covenants of Good Faith and Fair Dealing ((Third Claim for Relief to the extent it is based on the NDA); and Violations of the Uniform Trade Secrets Act (Fourth Claim for Relief) are DISMISSED with prejudice.

Plaintiff's Sealed Motion for Summary Judgment on Defendant's Non-Proprietary Information-based Counterclaims [Docket No. 42] is DENIED without prejudice to renew or refile after discovery has been completed. The court hereby extends the fact discovery deadline through January 15, 2016. Because of this ruling, StorageCraft's Motion for Protective Order [Docket No. 78] is MOOT.

This Memorandum Decision and Order ("MDO") has been filed under seal because the motions and all related briefing were filed under seal. It is unclear to the court, however, what, if anything, is entitled to protection. Accordingly, the court will unseal this MDO on October 12, 2015 unless either party has filed, prior to that date, a Motion to Maintain the Seal. Such a motion must clearly identify the specific language in the MDO that the party contends is confidential, must cite legal authority, and must explain why such information is entitled to protection. If such a motion is filed, it shall include as exhibits (1) a copy of this MDO with the purported confidential information highlighted, and (2) a declaration from lead counsel for the party filing the motion, attesting that he or she has reviewed the claimed protected information and has determined that it is entitled to be sealed under the law. The court will then decide whether to maintain the seal, to unseal the MDO, or to maintain the seal but issue a public, redacted copy of it.

30

DATED this 30th day of September, 2015.

BY THE COURT:

Dale A. Kimball

DALE A. KIMBALL
United States District Judge

United States District Court
for the
District of Utah
September 30, 2015

\*\*\*\*\*\*MAILING CERTIFICATE OF THE CLERK\*\*\*\*\*\*

RE: StorageCraft Technology v. Persistent Telecom Solutions
    2:14-cv-00076-DAK-PMW

Thomas R Karrenberg
ANDERSON & KARRENBERG
50 W BROADWAY STE 700
SALT LAKE CITY, UT 84101

Stanley J. Preston
PRESTON & SCOTT
111 E BROADWAY STE 1200
SALT LAKE CITY, UT 84111

/s/Jeff Taylor
_____

Jeff Taylor, Deputy Clerk