# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| STORAGECRAFT TECHNOLOGY CORPORATION, a Utah corporation, | REDACTED MEMORANDUM DECISION AND ORDER |
| **Plaintiff/Counterclaim Defendant,** | |
| vs. | |
| PERSISTENT TELECOM SOLUTIONS, INC., a Delaware corporation, | Case No. 2:14-CV-76-DAK |
| **Defendant/Counterclaim Plaintiff.** | Judge Dale A. Kimball |

This matter is before the court on Plaintiff StorageCraft Technology Corporation's ("StorageCraft's") Motion for Partial Summary Judgment on Defendant Persistent Telecom Solutions Inc.'s ("Persistent's") Non-Proprietary Information Based Counterclaims and on Persistent's Motion for Partial Summary Judgment on StorageCraft's Second, Third, Fourth, Fifth, and Eighth Claims for Relief. A hearing on the matter was held on October 26, 2016. At the hearing, StorageCraft was represented by Jason E. Greene, Heather M. Sneddon, Thomas Karrenberg, and John Durham. Persistent was represented by Stanley J. Preston and Brandon T. Crowther. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to the matter. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

StorageCraft is a computer software company that specializes in the development and marketing of backup, disaster recovery, and system migration software. In particular,

StorageCraft developed and sells the ShadowProtect family of products, which, once installed on a computer, makes periodic backups of all data contained on the computer's hard drive using StorageCraft's proprietary file format. These backups take the form of Image Files, which are saved to another drive or computer on the same or a remote network and which can be used to quickly restore the data in the event of a disaster.

Before 2012, Doyenz, Inc. was a company that, among other things, provided a cloud services product that allowed its customers to upload backup Image Files created by third-party software for storage on off-site servers controlled by Doyenz ("Doyenz's Cloud") and facilitated recovery of those images from the cloud in the event of a disaster. For much of its history, Doyenz's Cloud was designed to work primarily with backup Image Files created by StorageCraft's ShadowProtect products.

On December 30, 2009, Doyenz and StorageCraft entered into their first Software Distribution and License Agreement ("SDLA"), which permitted Doyenz to purchase certain StorageCraft products for the purpose of redistributing them in a bundle with Doyenz's Cloud to Managed Service Providers ("MSPs"). MSPs are end users of StorageCraft's software for the benefit of MSP customers and are subject to StorageCraft's End User License Agreement ("EULA") for StorageCraft's ShadowProtect line of products. Shortly after entering into the SDLA, StorageCraft and Doyenz agreed to enter into a license agreement to permit Doyenz to use a group of StorageCraft proprietary tools, referred to as the Data Center Recovery Product ("DCRP"). The DCRP license was incorporated into a new MSP Distribution Agreement that was executed on July 31, 2012, and that expressly superseded the December 2009 SDLA. Doyenz needed the DCRP to restore the Image Files on Doyenz's Cloud to the protected computer in their original format.

During the fall of 2012, StorageCraft consented to the assignment of its rights and obligations under the MSP Distribution Agreement from Doyenz to Persistent, which was in the process of negotiating the purchase of virtually all of Doyenz's assets. On March 18, 2013, StorageCraft notified Persistent that it would not be renewing the MSP Distribution Agreement, which expired on July 31, 2013, which would have left Persistent without a license to use the DCRP or any of its component parts. However, the MSP Distribution Agreement allowed for a transitional extension period, and Persistent exercised its right to the transitional extension, although StorageCraft disputes whether Persistent met all of the conditions within the agreement required to exercise its right to a transitional extension.

The MSP Distribution Agreement identifies the rights extended during the transitional extension period. Persistent believed that the rights included the right to use StorageCraft's DCRP, but StorageCraft believed that Persistent did not have the right to use the DCRP during the transitional extension period. StorageCraft offered to grant a license to use the DCRP for a limited period in exchange for a license fee. Persistent maintained that its interpretation of the MSP Distribution Agreement was correct, but Persistent negotiated an extension of the license to use the DCRP. After arm's-length negotiations, Persistent agreed to pay StorageCraft $285,000 for the right to use the DCRP for three additional months after the termination of the MSP Distribution Agreement, which extended the right to use the DCRP to October 31, 2013.

During the three additional months, Persistent developed and released a software product ("Replacement Solution") that would allow Persistent to continue to offer cloud storage services through its rCloud product to customers using ShadowProtect software products. Although the Replacement Solution does not directly include the DCRP or its components, it does rely on components of the DCRP included in the ShadowProtect end user's license.

3

Around that same time, StorageCraft discovered that Persistent was continuing to offer a version of its cloud services product that could only function by using StorageCraft's copyrighted code. In response, StorageCraft initiated this action claiming that Persistent was engaging in, among other things, direct and contributory copyright infringement. In response, Persistent asserted several counterclaims. StorageCraft renewed a motion for partial summary judgment, which was denied without prejudice to allow further discovery, on Persistent's counterclaims for breach of the implied covenant of good faith and fair dealing and for unjust enrichment. Persistent filed its own motion for partial summary judgment on the following StorageCraft claims for relief: Second (Contributory Copyright Infringement), Third (Violations of the Unfair Competition Act), Fourth (Conversion), Fifth (Breach of Contract – Intellectual Property), and Eighth (Intentional Interference with Contractual Relations).

## DISCUSSION

The court will address the motions for partial summary judgment in the order that they were filed. Therefore, the court will first address StorageCraft's summary judgment motion on some of Persistent's counterclaims and then the court will address Persistent's summary judgment motion on some of StorageCraft's claims for relief.

## STANDARD OF REVIEW

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of material fact is genuine if a reasonable jury could return a verdict for

the non-movant." *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996) (citation omitted). A fact is

material if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The moving party has 'both the initial burden of production on a motion for summary

judgment and the burden of establishing that summary judgment is appropriate as a matter of

law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v.*

*Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2003)). The moving party can meet

its burden by "point[ing] to an absence of evidence to support the non-movant's claim." *Id.*

(quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)). After the

moving party has met its burden, the non-moving party must "bring forward specific facts

showing a genuine issue for trial as to those dispositive matters for which it carries the burden of

proof." *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996).

## PERSISTENT'S NON-PROPRIETARY INFORMATION BASED COUNTERCLAIMS

StorageCraft moves for summary judgment on Persistent's counterclaims for violating

the covenant of good faith and fair dealing and for unjust enrichment. In this section, the court

will address both of these counterclaims.

### The Covenant of Good Faith and Fair Dealing

Under Utah law, "a covenant of good faith and fair dealing inheres in almost every

contract." *Oakwood Village LLC v. Albertsons, Inc.*, 104 P.3d 1226, 1240 (Utah 2004). "The

obligation of good faith requires each party to refrain from actions that will intentionally 'destroy

or injure the other party's right to receive the fruits of the contract.'" *Id.* at 1239 (quoting *St.*

*Benedict's Development Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199 (Utah 1991)). "To

determine the legal duty a contractual party has under this covenant, a court will assess whether a

'party's actions [are] consistent with the agreed common purpose and the justified expectations of the other party.'" *Id.* at 1239-40 (quoting *St. Benedict's Dev. Co.*, 811 P.2d at 200). In order to determine the "agreed common purpose and justified expectations of the other party," a court considers "the contract language and the course of dealings between and conduct of the parties." *Id.* (quoting *St. Benedict's Dev. Co.*, 811 P.2d at 200).

The following "general principles limit the scope of the covenant" of good faith and fair dealing in Utah. *Id.*

> First, this covenant cannot be read to establish new, independent rights or duties to which the parties did not agree ex ante. Second, this covenant cannot create rights and duties inconsistent with express contractual terms. Third, this covenant cannot compel a contractual party to exercise a contractual right to its own detriment for the purpose of benefitting another party to the contract. Finally, [the court] will not use this covenant to achieve an outcome in harmony with the court's sense of justice but inconsistent with the express terms of the applicable contract.

*Id.* (internal quotation marks and citations omitted).

Persistent claims that StorageCraft violated the covenant of good faith and fair dealing through the following conduct: by not renewing the initial terms of the MSP Distribution Agreement, by insisting that Persistent could not use the DCRP during a post-termination transitional extension period, by opposing Persistent's efforts to create a Replacement Solution after the termination of the MSP Distribution Agreement, by telling Persistent that it would have to give up all of its customers to StorageCraft after the termination of the MSP Distribution Agreement, and by taking action following the termination of the MSP Distribution Agreement to pursue Persistent customers and interfere with Persistent's relationship with them. Persistent argues that these actions constitute a breach of the implied covenant of good faith and fair dealing because they are inconsistent with Persistent's justified expectation that it could build and maintain a customer base that it could provide services to even after the expiration of the

MSP Distribution Agreement. StorageCraft argues that Persistent's expectation that it could continue to service its customers on a long-term basis were not justified and that StorageCraft's actions were consistent with the express terms of the MSP Distribution Agreement.

The court agrees that some of StorageCraft's actions were consistent with the express terms of the MSP Distribution Agreement. For example, the MSP Distribution Agreement expressly gave StorageCraft the right to terminate the agreement with at least 90-days' notice, which StorageCraft did through its March 2013 written notification of non-renewal to Persistent. Kunz Decl. Ex. E – MSP Distribution Agreement, at 9, ECF No. 46. The MSP Distribution Agreement also provided that Persistent's continued offering of services that rely on StorageCraft's proprietary files "is evidence that it is continuing to use the [DCRP], unless [Persistent] establishes to StorageCraft's satisfaction within five (5) days" of notice from StorageCraft "that the service is not based on the use of the [DCRP]." *Id.* at 21. Therefore, StorageCraft's actions requiring Persistent to establish that its Replacement Solution is not based on the DCRP and the eventual filing of this action are consistent with the terms of the MSP Distribution Agreement.

The court also agrees that Persistent's expectation that it would be able to continue to service its customers on a long-term basis, even after the expiration of the MSP Distribution Agreement, was not justified based on the contract language and the course of dealings between and conduct of the parties. Persistent's position is similar to the position rejected by the Utah Supreme Court in *Oakwood Village LLC v. Albertson, Inc.*, 104 P.3d 1226 (Utah 2004). In that case, Oakwood Village alleged that Albertsons breached a covenant of good faith and fair dealing that was implied in a lease agreement by vacating the leased premises before the end of the lease term and then refusing to sublease the premises in order to prevent competition. *Id.* at

1239. Oakwood Village claimed that Albertson's actions deprived it of "the real consideration for the lease—the ability of Albertsons to generate consumer traffic for the [Oakwood Village shopping] center." *Id.* The Utah Supreme Court concluded that Oakwood Village's theory failed as a matter of law because the parties simply had not bargained for the duty Oakwood Village was seeking to impose on Albertsons. Like in *Oakwood Village*, Persistent is seeking to impose a duty on StorageCraft that the parties have not bargained for. The MSP Distribution Agreement clearly contemplates the possibility of a termination, at which point all of Persistent's rights to StorageCraft software, documentation, and trademarks, including use of the DCRP, terminates and at which point Persistent's continued servicing of clients with ShadowProtect Image Files serves as evidence that Persistent is violating the terms of the agreement. Kunz Decl. Ex. E – MSP Distribution Agreement, at 21, ECF No. 46. Therefore, the court concludes that the StorageCraft did not violate the covenant of good faith and fair dealing by pursuing Persistent's customers after the MSP Distribution Agreement was terminated.

However, the court concludes that genuine issues of material fact exist as to whether StorageCraft violated the implied covenant of good faith and fair dealing by insisting that Persistent could not use the DCRP during a contractual transitional extension period. The MSP Distribution Agreement provides for the election of a transitional extension period in the event of a termination, during which Persistent would have the right to "fulfill the terms of existing MSP Provider Agreements so long as no new licenses to the Software are issued." *Id.* at 20; *see also Id.* at 8. The transitional extension is designed to allow Persistent to continue servicing its customers while it makes the necessary changes to move forward without relying on StorageCraft's intellectual property. Use of the DCRP is required for Persistent to fully service its customers. The parties dispute whether the MSP Distribution Agreement allowed Persistent to

continue to use the DCRP during the transitional extension, and both parties cite to provisions in the agreement to support their side of the argument. Although the court is not taking a position on whether the MSP Distribution Agreement expressly allowed for Persistent to use the DCRP during the transitional extension, the court concludes that genuine issues of material fact exist as to whether StorageCraft was under an implied duty to allow Persistent to use the DCRP so that Persistent could fulfill the terms of existing MSP Provider Agreements.

**Unjust Enrichment**

Utah law provides for the equitable remedy of unjust enrichment where a party can show three elements. "First, there must be a benefit conferred on one person by another. Second, the conferee must appreciate or have knowledge of the benefit. Finally, there must be the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Desert Miriah, Inc. v. B&L Auto, Inc.*, 12 P.3d 580, 582 (Utah 2000) (internal quotation marks and citations omitted). "The doctrine of unjust enrichment is designed to provide an equitable remedy where one does not exist at law. Therefore, where an express contract covering the subject matter of the litigation exists, recovery for unjust enrichment is not available." *Selvig v. Blockbuster Enters.*, 266 P.3d 691, 698 (Utah 2011) (internal brackets, quotation marks, and citations omitted).

While StorageCraft argues that a contract governs Persistent's claim, so unjust enrichment is not available, Persistent argues that the alleged contract may be invalid because Persistent was forced into the contract under duress. "[D]uress exists when 'a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative.'" *Boud v. SDNCO, Inc.*, 54 P.3d 1131, 1137 (Utah 2002) (quoting *Andreini v. Hultgren*, 860 P.2d 916, 921 (Utah 1993)). But "pecuniary" or "economic necessity"

is not sufficient to invalidate an agreement on the basis of duress. *See Gold Standard Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1064-65 (Utah 1996) ("The mere fact that a contract is entered into under stress or pecuniary necessity is insufficient to constitute duress."); *Berube v. Fashion Ctr., Ltd.*, 771 P.2d 1033, 1039-40 (Utah 1989) ("[E]conomic necessity alone is insufficient to invalidate a signed release."). In order for economic necessity to be a basis for claiming duress, it must be coupled with an improper threat. *See* Restatement (Second) of Contracts § 176, cmt. f and illustrations.

In this case, StorageCraft and Persistent entered into an agreement under which Persistent would pay StorageCraft $285,000 in exchange for StorageCraft allowing Persistent to use the DCRP for a period of three months. Neither party disputes that the agreement had all of the elements of a contract, which would make a claim for unjust enrichment unavailable, but Persistent argues that it was under duress when it entered the agreement. Specifically, Persistent argues that StorageCraft refused to acknowledge Persistent's right to use the DCRP during the transitional extension and coerced Persistent to pay $285,000 for 3-months' use of the DCRP, which Persistent agreed to do in order to prevent StorageCraft from harming Persistent's relationships with its customers. Persistent also argues that it had no reasonable alternatives to entering the agreement because a declaratory judgment or an injunction would not have been quick enough or sufficient to prevent the harm that StorageCraft could have done to Persistent.

The court concludes that Persistent has not provided sufficient evidence to demonstrate that it entered the agreement under duress. Persistent relies on pecuniary and economic stress as the foundation for its duress argument, but Persistent does not identify any improper threat made by StorageCraft in conjunction with the pecuniary or economic stress. In addition, Persistent has failed to convince the court that pursuing a declaratory judgment or an injunction were not

reasonable alternatives. Therefore, the court concludes that StorageCraft is entitled to summary

judgment on Persistent's unjust enrichment claim.

## STORAGECRAFT'S SECOND, THIRD, FOURTH, FIFTH, AND EIGHTH CLAIMS FOR RELIEF

### Contributory Copyright Infringement

"One infringes contributorily by intentionally inducing or encouraging direct

infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930-31

(2005). "Although the Copyright Act does not expressly render anyone liable for infringement

committed by another, these doctrines of secondary liability emerged from common law

principles and are well established in the law." *Id.* (internal quotation marks and citations

omitted). But, in order to succeed on a contributory infringement claim, a party must show that

"someone [has] directly infringed the copyright." *La Resolana Architects, PA v. Reno, Inc.*, 555

F.3d 1171, 1181 (10th Cir. 2009). "There are two elements to a copyright infringement claim:

'(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are

original.'" *Id.* at 1177 (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361

(1991)).

StorageCraft claims that Persistent is liable for contributory copyright infringement

because Persistent encouraged end users to directly infringe by (1) using rCloud, in violation of

the EULA and (2) copying or installing components of the DCRP to a new machine without a

license to do so. For purposes of this summary judgment motion, Persistent does not dispute that

StorageCraft owns a valid copyright in the DCRP and related tools. Persistent also seem to agree

that, in the absence of a license, making a copy of the tools in a computer's Random Access

Memoray (RAM) is a sufficient act to constitute copyright infringement. *See, e.g.*, *MAI Systems

Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993) ("The law . . . supports the

conclusion that Peak's loading of copyrighted software into RAM creates a 'copy' of that software in violation of the Copyright Act."); *Intellectual Reserve, Inc. v. Utah Lighthouse Ministry, Inc.*, 75 F. Supp. 2d 1290, 1294 (D. Utah 1999) ("[I]n making a [RAM] copy, even a temporary one, the person who browsed infringed the copyright."). Instead, Persistent argues that, to the extent that end users violate the EULA by using rCloud, they are only liable for breach of contract and not for copyright infringement and that StorageCraft has not provided sufficient evidence that end users have copied or installed components of the DCRP onto a new machine without a license to do so.

In terms of whether the end users can be liable for copyright infringement by violating the EULA, generally, a "'copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement' and can sue only for breach of contract," *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999). "To recover for copyright infringement based on the breach of a license agreement, (1) the copying must exceed the scope of the defendant's license and (2) the copyright owner's complaint must be grounded in an exclusive right of copyright (e.g., unlawful reproduction or distribution)." *MDY Indus., LLC v. Blizzard Entertainment, Inc.*, 629 F.3d 928, 940 (9th Cir. 2010); *see also Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008) ("If, however, a license is limited in scope and the licensee acts outside the scope, the licensor can bring an action for copyright infringement."). In other words, "the potential for infringement exists only where the licensee's action (1) exceeds the license's scope (2) in a manner that implicates one of the licensor's exclusive statutory rights." *Id.* To determine whether contract terms are limitations on the scope of a license agreement, courts analyze "the language and the

structure" of the agreement. *SCO Group, Inc. v. Novell, Inc.*, Civil No. 2:04-CV-139-DAK, 2007 WL 2327587, at *37-41 (D. Utah Aug. 10, 2007).

Some courts have distinguished between violations of conditions, which can constitute copyright infringement, and violations of covenants, which cannot, to determine whether a licensee's actions exceeded the scope of the license. *See, e.g., MDY Indus.,* 629 F.3d at 939. However, the court does not find this distinction particularly helpful because the violation of any term of a license potentially exceeds the scope of the license, and the second part of the analysis, whether the licensee has infringed on "the licensor's exclusive rights of copyright," *Id.* at 941, is sufficient to distinguish between violations that lead to copyright infringement and those that should be limited to breach of contract actions.

In this case, both parties agree that the relevant provision within the EULA is Section 5, which prohibits the copying of StorageCraft's software "except as specifically authorized by" the EULA and limits the use of StorageCraft's software with unlicensed, third-party software. Kunz Decl. Ex. H – End-User License Agreement for Select StorageCraft Software Products, at 5, ECF No. 46. Although the parties have argued over whether the relevant provisions are conditions or covenants and over whether the provisions are limitations on the scope of the license, the most relevant inquiry is whether violations of those provisions implicate one of the licensor's exclusive statutory rights. The court considers any violation of a term of the license agreement that implicates one of the exclusive statutory rights of a copyright owner to be sufficient to establish liability for copyright infringement. In this case, the violations of the provisions lead to RAM copies of portions of the software being made on the end users computer. Because copying is one of the exclusive statutory rights granted to the owner of a copyright, the court concludes that violating the provisions at issue implicate the licensor's exclusive statutory rights.

In terms of whether StorageCraft has provided sufficient evidence that end users have copied or installed components of the DCRP onto a new machine without a license to do so, the court concludes that StorageCraft has provided sufficient evidence to withstand summary judgment. Persistent argues that StorageCraft has not provided any evidence that any specific end user actually infringed StorageCraft's copyright. However, StorageCraft argues that it has provided enough "circumstantial evidence" to withstand summary judgment. *See Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1489 (10th Cir. 1993) (recognizing that "direct evidence of copying is rarely available"); *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987) ("Because direct evidence of copying is rarely available, a plaintiff may establish copying by circumstantial evidence . . . ."). StorageCraft has provided evidence that Persistent instructed its users to install the Mount Tools on the same machine as the rCloud agent, which is typically different from the machine licensed for the StorageCraft software, without instructing users to obtain an additional license. In addition, StorageCraft provided an email that instructed Persistent support personnel to have users install StorageCraft software on an unlicensed machine as a troubleshooting technique. Finally, StorageCraft provided information about users who continued to use rCloud after receiving these instructions from Persistent support and about the number of licenses that these customers purchased. The court concludes that StorageCraft has provided sufficient evidence for a reasonable jury to conclude that end users followed Persistent's instructions and infringed StorageCraft's copyright. Therefore, the court concludes that Persistent is not entitled to summary judgment on StorageCraft's contributory copyright infringement claim.

14

**Unfair Competition Act**

To bring a claim for violation of Utah's Unfair Competition Act ("UCA"), a plaintiff must show "an intentional business act or practice that" is "malicious cyber activity; . . . infringement of a patent, trademark, or trade name; . . . a software license violation; or . . . predatory hiring practices." Utah Code Ann. § 13-5a-102(4). Both parties seem to agree that the only potentially applicable category for StorageCraft's claim is a software license violation. However, the parties disagree on whether Persistent's alleged business acts or practices qualify as software license violations. The UCA does not define the term "software license violation," so the term should be given its plain meaning. *See, e.g., Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) ("When interpreting a statute, we must give words their 'ordinary or natural' meaning." (citation omitted)). The plain meaning of "software license violation" is the breach of an agreement granting permission to use software under a certain set of conditions.

Although the agreement at issue under this claim is a distribution agreement and although the scope of the agreement is much broader than simply the granting of permission to use software, a portion of the agreement qualifies as a software license. The agreement grants to Persistent the permission to use the DCRP and other StorageCraft software under a certain set of conditions. To the extent that Persistent violated the terms of the agreement that relate to the granting of permission to use the DCRP, Persistent has committed a software license violation.

Persistent also argues that, even if a portion of the agreement falls under the UCA, Persistent has not violated the provisions of the agreement related to the DCRP because it has not used the DCRP or any part thereof since October 31, 2013. But StorageCraft argues that Persistent violated Section 28.E of the agreement by not establishing within 5 days of StorageCraft's notice to do so that Persistent's Replacement Solution is not based on the DCRP.

The agreement provides that failing to comply with Section 28.E is deemed to be evidence that Persistent is continuing to use the DCRP in violation of the license. Persistent also argues that, to the extent that Persistent's rCloud continues to interact with StorageCraft technology, it does so only on the user's machine with components that are part of the user's installation. But StorageCraft argues that it has presented evidence to show the Persistent's Replacement Solution does in fact use components of the DCRP in violation of the terms of the licensing agreement, which requires Persistent to "cease all use of the [DCRP]" upon termination of the agreement. The court concludes that genuine issues of material fact exist as to whether Persistent has violated the terms of the licensing agreement by failing to establish to StorageCraft's satisfaction that the Replacement Solution is not based on the DCRP and by allegedly using components of the DCRP as part of the Replacement Solution.

Persistent's final argument on the UCA claim is that StorageCraft's claim is preempted by 17 U.S.C. § 301 because it is premised on the same substantive allegations underlying its copyright infringement claims. In the Tenth Circuit, to determine whether Section 301 of the Copyright Act preempts a state law cause of action, courts consider whether "(1) the work is within the scope of the subject matter of copyright as specified in 17 U.S.C. §§ 102 and 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Harold Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1542-43 (10th Cir. 1996) (quotations, citations, and footnote omitted). The Tenth Circuit's analysis under the second element compares the elements of the state law claim to the elements of a federal copyright claim instead of comparing the conduct alleged or the facts pleaded. *Id.* at 1543 ("[I]f a state cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then the state

cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action."). Further, "[p]reemption is an affirmative defense, and the defendant bears the burden of proof." *Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1351 (10th Cir. 2015).

StorageCraft argues that, if a state cause of action has different elements from the Copyright Act cause of action, then the state cause of action is not preempted, but Persistent argues that a court must go beyond a simple comparison of elements and must show that the causes of action are "qualitatively different" from each other to show that a state cause of action is not preempted. Both parties rely on the same language from the Tenth Circuit's opinion in *Harold Stores* to justify their positions. The relevant language in *Harold Stores* states, "[I]f a state cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action." *Harold Stores*, 82 F.3d at 1543. As the court interprets the language in *Harold Stores*, the identification of an extra element in the state law claim beyond those required for the copyright infringement claim is sufficient to show that the causes of action are qualitatively different from each other.

To succeed on a claim under the UCA, a plaintiff must provide proof of an "unlawful, unfair, or fraudulent" "intentional business act or practice," Utah Code Ann. § 13-5a-102(4)(a), which is not required to succeed on a copyright infringement claim. This extra element makes the two causes of action qualitatively different, so the state law cause of action is not preempted. This conclusion is consistent with a previous conclusion by this court that the UCA is not preempted by the Patent Act, which has similar standards for preemption in the Tenth Circuit.

*See Icon Health & Fitness, Inc. v. Johnson Health Tech N. Am., Inc.*, No. 1:00-CV-209-DN-DBP, 2015 WL 164607, at \*3 (D. Utah Jan. 13, 2015) (unpublished).

For the reasons stated above, the court concludes that Persistent is not entitled to summary judgment on StorageCraft's UCA cause of action.

**Conversion**

In Utah, "conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession." *Fibro Trust, Inc. v. Brahman Fin., Inc.*, 974 P.2d 288, 295-96 (Utah 1999) (citation omitted). Some courts have recognized that, "because it is intangible property, software is generally not subject to a conversion claim." *Tegg Corp. v. Beckstrom Elec. Co.*, 650 F. Supp. 2d 413, 432 (W.D. Pa. 2008). However, the Utah Supreme Court has recognized that "[s]oftware is information recorded in a physical form which has a physical existence, takes up space on the tape, disc, or hard drive, makes physical things happen, and can be perceived by the senses." *S. Cent. Utah Tel. Ass'n, Inc. v. Auditing Div. of the Utah State Tax Comm'n*, 951 P.2d 218, 223-24 (Utah 1997). Based on this reasoning, this court has concluded that software can be "the subject of a conversion claim under Utah law because it is tangible property." *Margae, Inc. v. Clear Link Techs., LLC*, 620 F. Supp. 2d 1284, 1288 (D. Utah 2009). But, even though software may be the subject of a conversion claim in Utah, the plaintiff must still show that he or she is deprived of the use and possession of the software to succeed on a claim for conversion.

In this case, StorageCraft has not provided sufficient evidence that it was deprived of the use and possession of its software by Persistent's alleged interference with that software. During the period of time at issue, StorageCraft continued to sell and market its software and remained in possession of the software code, as evidenced by StorageCraft's submission of the code to the

U.S. Copyright Office and StorageCraft's production of the code to Persistent. Because StorageCraft retained its possession and use of the software, the court finds that StorageCraft has not stated an adequate claim for conversion. *See Rich Media Club, LLC v. Mentchoukov*, No. 2:11-CV-1202-TS, 2012 WL 1119505, at *4 (D. Utah Apr. 3, 2012) ("Therefore, as there is no deprivation of possession of use of a chattel, the Court finds that Plaintiffs have not stated an adequate claim for conversion."). Therefore, the court concludes that Persistent is entitled to summary judgment on StorageCraft's conversion claim.

Because the court finds that StorageCraft has not adequately stated a claim for conversion, the court does not address Persistent's other argument that the conversion claim was preempted by the Copyright Act.

**Breach of Contract – Intellectual Property**

A breach of contract claim is established by showing: "(1) a contract, (2) performance by the party seeking recovery, (3) breach of contract by the other party, and (4) damages." *Bair v. Axiom Design, LLC*, 20 P.3d 388, 392 (Utah 2001). StorageCraft alleges that Persistent has breached the MSP Distribution Agreement by: (1) instructing and encouraging third parties to unlawfully copy and infringe the StorageCraft APIs and Copyrighted Code; (2) retaining copies of StorageCraft's software after termination of the agreement; and (3) continuing to use the DCRP or parts or components thereof. Persistent argues that StorageCraft has not provided any evidence that any of the alleged breaches occurred.

As the court discussed above, genuine issues of material fact exist as to whether users followed Persistent's instructions and infringed StorageCraft's copyright. Similarly, the court concludes that genuine issues of material fact exist as to whether Persistent retained copies of StorageCraft's software after termination of the MSP Distribution Agreement. For example,

StorageCraft has offered expert testimony opining that Persistent would have needed copies of StorageCraft's software to develop and test the Replacement Solution. Although some of the development and testing would have taken place during the period when Persistent still had rights to use the DCRP, additional development and testing took place after Persistent's right to use the DCRP terminated. Finally, StorageCraft has provided some evidence that Persistent continued to use the DCRP or parts or components thereof after Persistent's right to use the DCRP terminated, and, as already mentioned, StorageCraft's position on Persistent's continued use of the DCRP is enhanced by the contractual language from the MSP Distribution Agreement, which provides that Persistent's failure to establish to StorageCraft's satisfaction that its Replacement Solution is not based on the DCRP is deemed to be evidence that Persistent is continuing to use the DCRP in violation of the agreement. Therefore, the court concludes that a reasonable jury could find in StorageCraft's favor on each of its breach of contract claims discussed in Persistent's motion for summary judgment, so Persistent is not entitled to summary judgment on these claims.

**Intentional Interference with Contractual Relations**

In Utah, courts often discuss claims for intentional interference with contractual relations as a subset of claims for "intentional interference with economic relations" because the latter "protects both existing contractual relationships and prospective relationships of economic advantage not yet reduced to a formal contract." *Anderson Dev. Co. v. Tobias*, 116 P.3d 323, 331 (Utah 2005) (quoting *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991)). The general test for intentional interference with economic relations claims is described by the Utah Supreme Court in *Eldridge v. Johndrow*, 345 P.3d 553, 565 (Utah 2015). "In order to win a tortious interference claim under Utah law, a plaintiff must now prove '(1) that the

defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2)

. . . by improper means, (3) causing injury to the plaintiff." *Eldridge*, 345 P.3d at 565. Even

though it has described intentional interference with contractual relations claims as a subset of

intentional interference with economic relations claims, in some cases, the Utah Supreme Court

has provided independent tests for an intentional interference with contractual relations claim.

*See, e.g., Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 301 (Utah 1982) (requiring a

plaintiff to show a defendant's conduct "intentionally and improperly interferes with the

performance of a contract . . . between another and a third person by inducing or otherwise

causing the third person not to perform the contract" (quoting Restatement (Second) of Torts §

766 (1979)), *overruled on other grounds by Eldridge v. Johndrow*, 345 P.3d 553 (Utah 2015); *St.

Benedict's Development Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 201 (Utah 1991) ("A party is

subject to liability for an intentional interference with present contractual relations if he

intentionally and improperly causes one of the parties not to perform the contract."),

Persistent's primary argument in its motion for summary judgment is that StorageCraft

failed to prove that it suffered injury or damages from Persistent's alleged intentional

interference with the contractual relations between StorageCraft and StorageCraft's end users

and, to the extent that StorageCraft has identified damages, they are damages from the alleged

copyright infringement and not from the alleged intentional interference with contractual

relations. StorageCraft identifies two sources of damages that it claims to have suffered as a

result of Persistent's alleged interference with StorageCraft's contractual relations. First,

StorageCraft identifies lost license fees, which StorageCraft would have obtained from Persistent

for Persistent's continued use of StorageCraft's intellectual property if Persistent had not instead

accessed the intellectual property through users' licenses. Second, StorageCraft identifies lost

profits from StorageCraft's cloud services, which directly compete with Persistent's rCloud

product, that StorageCraft would have received if Persistent had not been able to improperly

access StorageCraft's intellectual property.

The court concludes that StorageCraft has provided sufficient evidence of consequential

damages caused by the Persistent's alleged intentional interference with StorageCraft's

contractual relations to survive summary judgment. *See* Restatement (Second) of Torts § 774A

(1979) ("One who is liable to another for interference with a contract . . . is liable for damages

for . . . consequential losses for which the interference is a legal cause.").

Persistent also argues that StorageCraft's claim for intentional interference with

contractual relations is preempted by the Copyright Act. As already discussed above, the

standard for preemption under Section 301 of the Copyright Act in the Tenth Circuit is whether

"(1) the work is within the scope of the subject matter of copyright as specified in 17 U.S.C. §§

102 and 103; and (2) the rights granted under state law are equivalent to any exclusive rights

within the scope of federal copyright as set out in 17 U.S.C. § 106." *Harold Stores, Inc. v.*

*Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1542-43 (10th Cir. 1996) (quotations, citations, and

footnote omitted). The Tenth Circuit's analysis under the second element compares the elements

of the state law claim to the elements of a federal copyright claim instead of comparing the

conduct alleged or the facts pleaded. *Id.* at 1543 ("[I]f a state cause of action requires an extra

element, beyond mere copying, preparation of derivative works, performance, distribution or

display, then the state cause of action is qualitatively different from, and not subsumed within, a

copyright infringement claim and federal law will not preempt the state action.").

Persistent cites a Sixth Circuit case for the proposition that "[g]enerally tortious

interference claims (with contract or prospective economic advantage) are held to be preempted

because the rights asserted in such claims are not qualitatively different from the rights protected by copyright." *Stromback v. New Line Cinema*, 384 F.3d 283, 306 (6th Cir. 2004). However, the *Stromback* case dealt with tortious acts that also directly violated "the exclusive rights granted by Section 106." *Id.* at 307. In this case, to succeed on its claim for intentional interference with contractual relations, StorageCraft is required to prove that its end users failed to comply with the terms of the contract, which is an extra element that "is different from unauthorized copying." *Klein-Becker USA LLC v. Englert*, No. 2:06-CV-378-TS, 2007 WL 2821621, at *2 (D. Utah Sept. 26, 2007); *see also Telecom Tech. Servs., Inc. v. Rolm Co.*, 388 F.3d 820, 833 (11th Cir. 2004) ("The tortious interference claim requires Siemens to demonstrate that the ISOs violated the terms of Siemens software license for third parties, which is an element beyond federal copyright law that prohibits unauthorized copying. As such, the state law claim is not preempted because the claim at issue is not equivalent to the claim under § 106." (citation omitted)). Therefore, the court concludes that StorageCraft's claim for intentional interference with contractual relations is not preempted by the Copyright Act. Therefore, the court concludes that Persistent is not entitled to summary judgment on StorageCraft's intentional interference with contractual relations claim.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that StorageCraft's Motion for Partial Summary Judgment on Persistent's Non-Proprietary Based Counterclaims is GRANTED in part and DENIED in part. StorageCraft's motion is denied as to Persistent's counterclaim for breach of the covenant of good faith and fair dealing based on StorageCraft's refusal to allow Persistent to use the DCRP during a post-termination transitional extension but is granted in all other respects. Persistent's Motion for Partial Summary Judgment on StorageCraft's Second,

Third, Fourth, Fifth, and Eighth Claims for Relief is GRANTED in part and DENIED in part. Persistent's motion is granted with respect to StorageCraft's fourth claim for relief (conversion) but is denied with respect to StorageCraft's other claims for relief.

This Memorandum Decision and Order is issued under seal because several of the motions were filed under seal. However, the court requests the parties to notify it within ten days of the date of this order as to whether the seal can be lifted or to provide the court with what portions would need to be redacted in a public copy of the Memorandum Decision and Order.

DATED this 22d day of November, 2016.

BY THE COURT:

DALE A. KIMBALL
United States District Judge